**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 07-016 (RMU)** |
| | : | |
| **JEFFREY LINDSAY,** | : | |
| | : | |
| **Defendant.** | : | |

## SENTENCING MEMORANDUM

On June 11, 2007, Mr. Jeffrey Lindsay, the defendant, pled guilty to Count One in an Indictment charging him with Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). He will appear before this Honorable Court for sentencing on August 21, 2007. Mr. Lindsay, through undersigned counsel, respectfully submits the following information for the Court's consideration in determining a fair and just sentence.

## BACKGROUND

On November 3, 2006, members of the United States Park Police executed a search warrant at 4509 New Hampshire Avenue, N.W., Washington, D.C. At the time of the search warrant, Ms. Henrietta Lindsay - Mr. Lindsay's mother and owner of the residence, was present. The search of Mr. Lindsay's bedroom revealed the following: (1) 249.2 grams of cocaine hydrochloride inside of a red tote bag located on the left side of the bed; (2) a loaded Hi-Point 9 mm semi-automatic pistol inside of the red tote bag; (3) a loaded Taurus .357 revolver inside of a black drawstring bag on the left side of the bed; (4) assort 9 mm, .40 caliber, .38 caliber, and .357 caliber ammunition; (5) digital scales; (6) 17.2 grams of cocaine base located inside a safe; and

(7) $51,620.00 in U.S. currency located inside a safe.

On January 25, 2007, the grand jury returned a six-count indictment charging Mr. Lindsay with the following offenses: Count One - Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii); Count Two - Unlawful Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(c); Count Three - Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1); Count Four - Unlawful Possession with Intent to Distribute Cannabis, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(D); Count Five - Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); and Count Six - Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). Mr. Lindsay was arraigned on the indictment on May 7, 2007.

On June 11, 2007, Mr. Lindsay pled guilty to Count One of the Indictment pursuant to a written plea agreement. Under the terms of the plea agreement, the parties agreed that Mr. Lindsay is accountable for more than 5 grams but less than 20 grams of cocaine base, also known as crack, and more than 200 grams but less than 300 grams of cocaine hydrochloride. Further, Mr. Lindsay acknowledged that he possessed a loaded Taurus .357 caliber handgun, and a loaded Hi-Point semi-automatic pistol. The parties further agreed that a three point reduction would apply pursuant to U.S.S.G. § 3E1.1(a) and (b).

In light of the agreements made between the parties, the Pre-Sentence Report writer has calculated that the applicable base offense level is 26; with a two point enhancement pursuant to

U.S.S.G. § 2D1.1(b)(1); also including a three point reduction for acceptance of responsibility, pursuant to §3E1.1. See PSR, ¶ 15, 16, 22, pg 5. Thereby resulting in an adjusted offense level of 25. See PSR, ¶ 23, pg 5. Pursuant to the criminal history calculations, consistent with the parties understanding at the time of the plea, Mr. Lindsay is in Criminal History Category I. See PSR, ¶ 28, pg, 8. Therefore, based upon a Criminal History Category I and an adjusted base offense level of 25, the guideline range of imprisonment is 57 to 71 months. See PSR, ¶ 68, pg. 16. There are no disputes to these calculations.

Further, both parties agreed that a sentence within the applicable guideline range is reasonable and that neither party would be seeking a sentence outside of the applicable guideline range. Therefore, in light of the agreements in this case and the undisputed guideline calculations, Mr. Lindsay requests a sentence at the low end of the calculated range - specifically a term of sixty months imprisonment in accordance with the mandatory minimum term of imprisonment required in this case.

## ARGUMENT

Notwithstanding the agreements stated in the plea agreement, it should be noted, however, that the Guidelines are not mandatory, but merely advisory. The factors identified in 18 U.S.C. § 3553(a) support Mr. Lindsay's request that he be sentenced to sixty months - the mandatory minimum sentence in this case. The Court must consider the Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 260 (2005). These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a). Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

After considering all of the factors set forth in § 3553(a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." Id. at 765 (citing 18 U.S.C. § 3553(a)(2)). Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.** (Emphasis added).

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." 18 U.S.C. § 3553(a).

As the Supreme Court recently confirmed, courts are "no longer . . . tied to the sentencing range indicated in the Guidelines." Cunningham v. California, 127 S. Ct. 856, 867 (2007). Instead, courts are "obliged to 'take account of' that range along with the sentencing goals Congress enumerated in the [Sentencing Reform Act] at 18 U.S.C. § 3553(a)." Id. (quoting Booker, 543 U.S. at 259, 264); see also United States v. Pickett, 475 F.3d 1347, 1351 (D.C. Cir. 2007) ("The Court's remedial opinion [in Booker] required the district court to treat the

Guidelines as advisory only and as simply one factor to be considered in sentencing.").

A review of all of the applicable factors set forth in § 3553(a) demonstrates that a sentence of sixty months incarceration would be warranted in this matter, and that a sentence of imprisonment in excess of the applicable mandatory minimum in this case would be greater than necessary to meet the sentencing purposes set forth in § 3553(a).

**I. Disparities between Penalties for Possession of Cocaine Base Versus Cocaine Powder Should Be Considered under § 3553(a)(1)**

This Court should "take into account the fact that the 100-to-1 ratio embedded in the Sentencing Guidelines for crack-to-powdered cocaine offenses bears no meaningful relationship to a defendant's culpability." United States v. Pickett, 475 F.3d 1347, 1356 (D.C. Cir. 2007) (J.Rodgers concurring) (noting court's decision "finally" holding that district courts may properly consider this factor).

As the United States Sentencing Commission has recognized, the cocaine base Guidelines do not effectuate the purposes of sentencing. "When it comes to the application of Guideline § 2D1.1 in crack cocaine cases, the Commission is one of its severest critics." Id. at 1353. In 2002, the Commission "bluntly" stated that it "'firmly and unanimously believes that the current federal cocaine sentencing policy is unjustified and fails to meet the sentencing objectives' in § 3553(a)." Id. at 1354. The crack cocaine Guidelines are unjustified and do not meet the objectives of § 3553 for numerous reasons, including: (1) the Guidelines lead "to anomalous results in which retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced;" (2) the 100-to-1 ratio "greatly overstates the relative harmfulness of crack cocaine;" (3) crack cocaine dealers who are responsible for relatively small quantities "receive especially disparate penalties in comparison to

similar powder cocaine offenders;" (4) "all crack cocaine offenders [are treated] as if they committed [harmful conduct such as violence], even though most crack cocaine offenders in fact had not;" (5) "use of the 100-to-1 ratio and its quantity-based approach threatens public confidence in the federal courts because it has had a disproportionate impact on African-American offenders;" and (6) although "meant to promote uniformity in sentencing, not to increase the length of sentences," the crack Guidelines increased sentences "far above" the sentences typically imposed prior to the Guidelines. Id. (internal quotation marks and citations omitted). As the D.C. Circuit found: "In terms of the sentencing factors of § 3553(a), the Commission thus believes that its Guideline for crack distributors generates sentences that are 'greater than necessary,' exaggerates 'the seriousness of the offense' of crack trafficking, does not 'promote respect for the law,' and does not 'provide just punishment for the offense.'" Id. (quoting 18 U.S.C. § 3553(a), (a)(2)(A)).

Mr. Lindsay submits that sentencing him to the mandatory minimum penalty of sixty months incarceration does not diminish the seriousness of the offense of crack cocaine trafficking, but does promote respect for the law, and provides just punishment for the offense. In addition, it should be noted that the Commission has recently submitted amendments to Congress which will reduce the cocaine base Guidelines by two offense levels. The Commission has offered this amendment as an "interim solution to some of the problems associated with the 100-to-1 drug quantity ratio." Amendments to the Sentencing Guidelines: May 11, 2007, pg. 67. Assuming that this amendment is not disapproved by Congress, the applicable base offense level to the amount of cocaine base in this case, 17.2 grams, would be 24. Mr. Lindsay submits that his total offense level would be 23 after receiving a two point enhancement pursuant to §

2D1.1(b)(1) and his three point reduction for acceptance of responsibility. Therefore, based upon a total offense level of 23 and a criminal history category of I, the applicable guideline range would be 46 to 57 months incarceration - a range of imprisonment below the applicable statutory minimum. Mr. Lindsay submits this information only for the purpose of requesting a sentence at the low-end of the calculated guideline range.

## II. Factors of Mr. Lindsay that the Court Should Consider under § 3553(a)(1)

### *A. Nature of the Offense and Characteristics of the Defendant*

While Mr. Lindsay committed a very serious crime, he has expressed regret and remorse for his actions. Mr. Lindsay agreed to waive his right to file any pre-trial motions, and pled guilty in a timely fashion - approximately thirty days after his arraignment - thereby saving scarce judicial resources.

As set forth in the PSR, Mr. Lindsay is a 41-year-old man who has been a life-long resident of the Washington, D.C. area. He is a committed family man, in particular to his ailing mother. As evidenced by the attached letters from various family members and long-time friends, Mr. Lindsay has endured significant losses during this life - the death of his father at the tender age of seven, and most recently, the death of his brother just six years ago.

## CONCLUSION

In light of all of the arguments presented and such other reasons that may be discussed at the sentencing hearing in this matter, Mr. Lindsay respectfully submits that sentencing him to a sixty-month term of imprisonment is "sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, or effectively provide Mr. Lindsay with needed educational or

vocational training and medical care." See 18 U.S.C. § 3553(a).

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

______/s/____________________

Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

# Attachment

June 18, 2007

The Honorable Ricardo M. Urbina
United States District Judge
333 Constitution Ave. NW
Washington, DC 20001

**Re: Jeffrey Lindsay**

Dear Judge Urbina:

The purpose of my letter today is to discuss Jeffrey Lindsay. I am a long time family friend and neighbor of Jeff and his family.

Jeff Lindsay, as he is known by his family and friends, was born and raised in Washington DC. His parents were the typical black parents who migrated to Washington from the South in the early 50's, who gave him the best life that they could afford, but gave him an abundance of love and respect, which instilled (as I know him) good character and integrity in Jeff.

During Jeff's early childhood years, he and two siblings were eventually left to be raised by his Mother only, because his father was deceased while Jeff was very young. This tragic incident, of course, put his mother in an all too familiar position (being head of household and a single parent), in which Mrs. Lindsay did an excellent job in raising her three children. I am a single mother (I also lost my husband) and had the burden of raising my two children. Jeff was raised very well and was constantly given life inspirations by his Mother, who, by the way is very ill and Jeff was taking care of her.

And, of course, his Mother is most devastated after learning about Jeff's getting in trouble and I am as well.

I don't know if you've spoken with Jeff, but he is a kind, respectful man who happened to make a dreadful wrong decision. However, Jeff seems to really regret his wrong doing and has learned a valuable lesson from it. If you would please take this into consideration all of the good things mentioned and please sentence Jeff with these considerations in mind. I know that you often hear these types of pleas frequently, but before writing you, I read the series of past articles from the Washington Post called "Being a Black Man," I have a lot more compassion for our black men in America. Please find it in your heart, Your Honor, to try and understand all of the barriers being faced by black men in this country past and present. Jeff falls in the dual realities of his history – steady progress and devastating setbacks. He was not raised to break the law. And, as you may be aware, once the black child leaves (or drops out of) school, nearly three-quarters are jobless, or incarcerated, with an unemployment rate much higher than that of similarly situated whites and Hispanics.

In sum, your Honor, Jeff is really a good man and just after a short time in DC jail, he has expressed to me that he realized the great negative consequences of his crime and will definitely walk a straight line in the future.

Another thing, I have been in your courtroom several times, and I have great respect for you, Your Honor, the way that you treat defendants that come before you. Thank you for that, and thank you kindly for taking the time to read my letter.

My Best Regards,

Carolyn Logan

Carolyn Logan

June 15, 2007

United Stated District Judge
Honorable Ricardo M. Urbina
3333 Constitution Avenue, N.W.
Washington, DC 20001

Dear Judge Urbina,

I am writing on behalf of my brother Jeffrey Lindsay. I am his oldest sister Deborah Goodwin. Jeff is a kind, loving brother and man. His father died when Jeffrey was six years old. He was so distraught that he had to go to see a psychologist for awhile. My mother, Henrietta Lindsay, had to raise us alone. Jeff's upbringing was nothing of the sort of what he is going through right now. She taught us to be respectful, to obey the law and do the right things. Six years ago our oldest brother died suddenly of a heart attack at the age of 44 and Jeff took it very hard. Leaving Jeff as our mother's only son, he knew that he had to step up and be the man of the family.

Jeffrey loves his mother dearly and did everything he had to do for her because of her health. Our mother isn't doing to good because she has diabetes and dementia. Shortly after the search of her home, where Jeff resided, my mother had a slight heart attack. Being that this is the first time this ever happened, she now today still is upset of how the whole ordeal had happen. Before her sickness has worsened, Jeff and I had been the caretakers of our mom. My oldest daughter has a son 8 years old, when he was born, Jeff had helped her raise her son. Because of his love for her son, he has grown to love Jeff as if he was his father. This situation is a tremendous tragedy for him and the family. Jeff stepped up and took care of him as if he was his own, financially and emotionally. Jeff took on this responsibility while my grandson's biological father wasn't able and still was before this incident.

Jeffrey made a bad decision and I do believe he is sincerely sorry and embarrassed by what he has put him and his family through. Especially his mother, knowing he should be here enjoying the rest of the time he has with her at her fragile age.

Sincerely,

Deborah Goodwin

June 25, 2007

United Stated District Judge
Honorable Ricardo M. Urbina
3333 Constitution Avenue, N.W.
Washington, DC 20001

Dear Judge Urbina,

I am writing on behalf of my uncle Jeffrey Lindsay. I am his oldest niece that resided with him for years. My uncle is a very loving, respectful and honorable person. I love him very much. My loyalty is beyond for him because he is loyal to me. My uncle has helped me throughout my life growing up. He and I are very close. I consider him as a brother of mine. Jeff and I am four years apart. When my grandfather passed it was a tremendous loss of Jeff because he was very young and very close to his father. My grandfather wore Jeff as a pocket on his hip. You wouldn't see one without the other. Knowing that his father had passed away over the years my dad (Harold Goodwin) had tried to play a very important role in Jeff's life. With that being said, Jeff was always with me and my sisters. Jeff and I was the oldest so we hung together the most. He would always come over our house sometimes for the whole summer when we were out of school. As we grew our friendship had grew with us. He had helped me with a lot of my trials in life. Jeff had helped me mentally and financially with my kids. My son, Jaylen, loves Jeff as a 2nd father. They are very close. Jaylen misses Jeff very much. Jeff had a great influence in his life. Your Honor, Jeff is well needed out here with us because our family is so close knit and is dependent on him.

Jeff along with me was taking care of his mother. We needed each other to take care of her. My grandmother is very sickly. She has dementia and need to be looked after under these conditions.

I believe that Jeff has learned his lesson and regret even taking a chance with his life as he did. Please find it in your heart to give him another chance with his life and let this be the last big mistake he ever made in his life.

Sincerely,

Carolyn Williams

Carolyn Williams

June 13, 2007

The Honorable Ricardo M. Urbina
United States District Judge
333 Constitution Ave NW
Washington, DC 20001

Re: Jeffrey Lindsay

Dear Judge Urbina:

I am writing this letter to say a few words about Jeffrey Lindsay. I have known Jeff and his family since 1991. We have visited each others homes for entertainment and dinner. From what I gather, Jeff comes from a nice respectful family. He has always been very polite and conducted himself as a gentleman around me and my family.

I believe he is a very good young man, who just made a wrong decision (by getting in trouble) and I believe he is the kind that will never repeat this bad behavior or bad decision again in life.

I am asking, Your Honor, if you would please consider my statement and sentence Mr. Lindsay with compassion. His elderly Mother needs him.

Thank you for reading my brief letter.

Sincerely,
Monica Roberts

Monica Roberts