UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-016 (RMU) |
| | : | |
| v. | : | |
| | : | |
| JEFFREY LINDSAY, | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court, sentence the defendant to a period of incarceration at the high end of the Guidelines range of 60-71 months.

**I.    BACKGROUND**

The defendant will come before the Court for sentencing in this case on August 23, 2007. The defendant was charged in a six count indictment with (1) unlawful possession with intent to distribute 5 grams or More of cocaine base, (2) unlawful possession with intent to distribute cocaine, (3) using, carrying and possessing a firearm during a drug trafficking offense, (4) unlawful possession with intent to distribute cannabis, (5) unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, and (6) unlawful possession of ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year.

Pursuant to a plea agreement with the government the defendant pled guilty to count one of the indictment, possession with intent to distribute 5 grams or more of cocaine base. As part of the plea agreement, the defendant agreed and acknowledged that he was accountable for possessing with the intent to distribute more than 5 grams but less than 20 grams of cocaine base, more than 200 grams but less than 500 grams of cocaine, and possessing a loaded Taurus .357

caliber handgun and a loaded Hi Point 9mm semiautomatic pistol. The facts underlying the specific offense to which the defendant pled guilty are set forth in detail in the factual proffer submitted to the Court at the time of the plea hearing.

The charges in this case arose out of the execution of a search warrant by the United States Park Police ("USPP") of the defendant's residence based on information that the defendant had a gun in his home. During the execution of search warrant the USPP seized from the defendant's bedroom 17.2 grams of crack cocaine, 249.2 grams of cocaine hydrochloride, a loaded Hi-Point 9mm semi-automatic pistol and a loaded Taurus .357 revolver. The USPP also seized 5 digital scales and approximately $51,620 from the defendant's bedroom.

## II.    SENTENCING CALCULATION

### A.    Statutory Minimum/Maximum

The minimum term of imprisonment for the charge of unlawful possession with intent to distribute 5 grams or more of cocaine base, a Class B Felony, in violation of Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(iii), is 5 years. The maximum punishment is 40 years and/or a fine of $2 million, or both. PSR at ¶ 67.

### B.    United States Sentencing Guidelines Calculation

The Presentence Report writer has calculated defendant's total offense level to be 25 and a criminal history category of I. PSR at ¶ 23. Thus, the defendant's Guidelines range for violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(iii) would be 57 to 71 months. PSR at ¶ 68. Given the 5-year statutory minimum, the applicable Guidelines range would be 60 to 71 months. PSR at ¶ 68. Because the applicable Guidelines range is in Zone D of the Sentencing Table, the defendant would not be eligible for probation. See USSG § 5B1.1,

Comment n. 2, and USSG § 5C1.1(f).

       C.  The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory,  Title 18, United States Code, Section 3553(b)(1).  Booker, 543 U.S. at 258.  However, the Court expressly refused to invalidate the Guidelines in their entirety.  To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime.  Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines.  See 18 U.S.C. Section 3554(c)(2).  The sentence will then be subject to review by courts of appeals for "reasonableness."  Id. at 261.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines.  See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing).  "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  Booker at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)).  In light of this mandate – and the continued requirement of written explanations for sentences that fall

outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 250 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals. This is so, said the court in United States v. Wilson, 350 F.

Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference.  Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 950.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in Section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

### III. DEFENDANT SHOULD BE SENTENCED AT THE HIGH END OF THE GUIDELINES RANGE OF 60-71 MONTHS

The Government recommends that the Court sentence the defendant within the Guidelines range of 60-71 months.  Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but would also be justified by

consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories: the nature of the offense, the needs of the public, and the history and characteristics of the defendant. United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

The defendant's illegal conduct represents a real and present danger to the community. In this case, the defendant possessed not only a drug dealer's quantity of crack cocaine and powder cocain, but also two loaded handguns. Considering that drugs and drug-related gun violence are the source of the vast majority of crimes in this City and of violence against its citizens, the defendant's conduct here is reprehensible. It is vital that the Court send a message to both the defendant and the community that drug dealing, and the possession of guns by drug dealers, will not be tolerated.

It should also be noted that the defendant has already received a substantial benefit for his early acceptance of responsibility. Specifically, the defendant received a three point decrease in his offense level under the Guidelines. Had the defendant not received this benefit, his Guidelines range would have been 78-97 months rather than 60-71 months. The defendant will also receive the substantial benefit of having the remaining counts of the indictment dismissed at the time of sentencing. Count three, in particular, would have subjected the defendant to a mandatory minimum 5 year term of imprisonment that would have been consecutive to any other term of imprisonment. See 18 U.S.C. 924(c)(1)(D)(ii). This benefit is substantial because otherwise the defendant could have faced a mandatory minimum sentence of 120 months in prison. Accordingly, the defendant has already received all the leniency he should under the plea. Sentencing the defendant at the high end of the Guidelines range would serve the interests

of the community and give both the government and the defendant the benefit of the bargain negotiated.

**V.    CONCLUSION**

The defendant should be sentenced at the high end of the Guidelines range of 60-71 months.

                                      Respectfully,

                                      JEFFREY A. TAYLOR
                                    United States Attorney

                                      /S/
                              _____
                              LOUIS RAMOS
                              Assistant United States Attorney
                              Federal Major Crimes Section
                              555 4th Street, N.W.  #4243
                              Washington, DC 20001
                              Phone: 305-2195; Fax: 616-3782
                              D.C.  Bar No. 472-176